# EXHIBIT 1

Filing # 69626955 E-Filed 03/21/2018 05:22:08 PM

IN THE CIRCUIT COURT FOR THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

CASE NO.

VANINA VARA,

      Plaintiff,

v.

ANALIA INOCENTI, an individual
TONY ESSES, an individual
ANDREA ROMANO, an individual
HSBC PRIVATE BANK
INTERNATIONAL, an Edge Act corporation
BARCLAYS BANK, PLC,
an England and Wales public limited company,
BARCLAYS CAPITAL, INC., a Connecticut corporation,
WELLS FARGO CLEARING SERVICES, LLC,
f/k/a WELLS FARGO ADVISORS, LLC.,
a Delaware limited liability company,
BRIALLEN GLOBAL ASSETS LTD.,
a British Virgin Islands limited company.
ANALIA VANINA, LLC., a Florida limited liability company, and
NRD INVESTMENTS, LLC, a Florida limited liability company.

      Defendants.

_____/

## COMPLAINT

    Plaintiff, Vanina Vara ("Vara"), sues Defendants, Analia Inocenti ("Inocenti"), Tony

Esses ("Esses"), Andrea Romano ("Romano"), HSBC Private Bank International ("HSBC"),

Barclays Bank, PLC ("Barclays Bank"), Barclays Capital, Inc. ("Barclays Capital") ("Barclays

Capital" and "Barclays Bank" will also be referred to collectively as "Barclays"), Wells Fargo

Clearing Services, LLC f/k/a Wells Fargo Advisors, LLC ("Wells Fargo") (HSBC, Barclays, and

Wells Fargo will be also referred to collectively as the "Banks"), Briallen Global Assets Ltd.

("Briallen"), Analia Vanina, LLC ("Analia Vanina"), and NRD Investments, LLC ("NRD"), and in further support states:

## PARTIES AND JURISDICTION

1.     This is an action for damages exceeding $750,000.00, excluding interest, costs, and attorney's fees.

2.     Plaintiff Vara is domiciled in Buenos Aires, Argentina.

3.     Defendant Inocenti is, upon information and belief, domiciled in Buenos Aires, Argentina. This Court has personal jurisdiction over Inocenti under § 48.193(1), Florida Statutes, because the causes of action asserted herein arise from, or relate to, Inocenti's contacts with the State of Florida. As further alleged herein, at all times relevant hereto, Inocenti committed multiple tortious acts in this state that caused harm to Vara, and has an interest in real property in this state from which Vara's causes of action arise.

4.     Defendant Esses is domiciled in Miami-Dade County, Florida.

5.     Defendant Romano is domiciled in Miami-Dade County, Florida.

6.     Defendant HSBC is an Edge Act corporation conducting business in Miami, Florida. Personal jurisdiction over HSBC is founded on: (a) Section 48.193(1)(a)(1), Florida Statutes, because it has operated, conducted, engaged in, or carried on a business in Florida and/or has an office or agency in Florida; and/or (b) Section 48.193(1)(a)(2), Florida Statutes, because HSBC has committed a tortious act or acts in Florida, as further alleged herein. The claims against HSBC arise from those contacts within Florida.

7.     Additionally, personal jurisdiction over HSBC is also founded on Section 48.193(2), Florida Statutes, because HSBC has engaged and/or is engaging in substantial, not

isolated, activities within the State of Florida. HSBC's contacts with the state are so continuous and systematic as to render it essentially at home in the state.

8.   Defendant Barclays Bank is a public limited company organized and existing under the laws of England and Wales with its principal place of business at One Churchill Place, London, England, that is also registered to conduct business in Florida. Personal jurisdiction over Barclays Bank is founded on: (a) Section 48.193(1)(a)(1), Florida Statutes, because it has operated, conducted, engaged in, and/or carried on a business in Florida and/or has an office or agency in Florida; and/or (b) Section 48.193(1)(a)(2), Florida Statutes, because Barclays Bank has committed a tortious act or acts in Florida, as further alleged herein. The claims against Barclays Bank arise from those contacts within Florida.

9.   Additionally, personal jurisdiction over Barclays Bank is also founded on Section 48.193(2), Florida Statutes, because Barclays Bank has engaged and/or is engaging in substantial, not isolated, activities within the State of Florida. Barclays Bank's contacts with the state are so continuous and systematic as to render it essentially at home in the state.

10.   Defendant Barclays Capital, an affiliate and agent of Barclays Bank, is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business in New York that is also registered to conduct business in Florida. Personal jurisdiction over Barclays Capital is founded on: (a) Section 48.193(1)(a)(1), Florida Statutes, because it has operated, conducted, engaged in, and/or carried on a business in Florida and/or has an office or agency in Florida; and/or (b) Section 48.193(1)(a)(2), Florida Statutes, because Barclays Capital has committed a tortious act or acts in Florida, as further alleged herein. The claims against Barclays Capital arise from those contacts within Florida.

3

11.     Additionally, personal jurisdiction over Barclays Capital is also founded on Section 48.193(2), Florida Statutes, because Barclays Capital has engaged and/or is engaging in substantial, not isolated, activities within the State of Florida. Barclays Capital's contacts with the state are so continuous and systematic as to render it essentially at home in the state.

12.     Defendant Wells Fargo is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Missouri that is also registered to conduct business in Florida. Personal jurisdiction over Wells Fargo is founded on: (a) Section 48.193(1)(a)(1), Florida Statutes, because it has operated, conducted, engaged in, and/or carried on a business in Florida and/or has an office or agency in Florida; and/or (b) Section 48.193(1)(a)(2), Florida Statutes, because Wells Fargo has committed a tortious act or acts in Florida, as further alleged herein. The claims against Wells Fargo arise from those contacts within Florida.

13.     Additionally, personal jurisdiction over Wells Fargo is also founded on Section 48.193(2), Florida Statutes, because Wells Fargo has engaged and/or is engaging in substantial, not isolated, activities within the State of Florida. Wells Fargo's contacts with the state are so continuous and systematic as to render it essentially at home in the state.

14.     Defendant Briallen is a limited company organized and existing under the laws of the British Virgin Islands. Personal jurisdiction over Briallen is founded on Section 48.193(1)(a)(2), Florida Statutes, because Briallen has committed a tortious act or acts in Florida, as further alleged herein. The claims against Briallen arise from those contacts within Florida.

15.     Defendant NRD is a Florida limited liability company with its principal place of business in Miami Gardens, Florida.

16.     Defendant Analia Vanina is a Florida limited liability company with its principal place of business in Miami Gardens, Florida.

17.     Venue is appropriate because the causes of action giving rise to this lawsuit accrued in Miami-Dade County, Florida, the suit concerns real property located in Miami-Dade County, Florida, and Defendants Esses and Romano reside in Miami-Dade County, Florida.

## GENERAL ALLEGATIONS

**I.     INOCENTI EARNS VARA'S TRUST**

18.     Vara received a substantial inheritance when her father passed away.

19.     In an effort to induce Vara to turn over control of her assets, Inocenti knowingly falsely held herself out as an educated and experienced financial advisor/wealth manager who could assist Vara in managing her assets.

20.     In order to prove her value, Inocenti offered to broker the sale of certain business assets that had belonged to Vara's father.

21.     After what appeared to be a successful transaction (although it later turned out to include self-dealing and/or dishonesty from Inocenti) and Inocenti's representations as to her experience and status, Vara hired Inocenti to manage her financial affairs in exchange for a monthly fee of approximately US$10,000.00.

22.     Inocenti's services to Vara included (1) managing Vara's bank accounts, (2) consulting on and recommending investments to grow Vara's wealth, and (3) keeping an accurate accounting of Vara's finances.

23.     Inocenti also persuaded Vara to execute a General Power of Attorney, naming Inocenti attorney-in-fact and granting Inocenti the ability to administer Vara's wealth in any jurisdiction for Vara's benefit. *See* Exhibit "A."

## II.   INOCENTI BRINGS IN MIAMI-BASED BANKERS TO ASSIST IN "MANAGING" VARA'S WEALTH

24.     Inocenti recommended that Vara transfer all her liquid assets (approximately US$20,000,000.00 at the time) to an HSBC branch in Miami and use Defendants Esses and Romano, a married couple working at that HSBC office, as her bankers and financial advisors. Esses was and is a registered financial advisor.

25.     Inocenti represented to Vara that she was recommending Esses and Romano because they were of Argentinian descent, were trustworthy, and could communicate to her and Vara in Spanish.  Inocenti also represented that Esses and Romano would use the money to create and grow a profitable investment portfolio, the earnings of which would support Vara, while keeping her principal intact.  Moreover, Inocenti represented that, given the political and financial climate in Argentina, Vara's cash assets would be safer in a U.S. bank.

26.     Inocenti failed to disclose that she had enlisted, or intended to enlist, Esses and Romano as participants in her scheme to defraud Vara.

27.     In reasonable reliance on Inocenti's representations, and without knowledge of Inocenti's true intent, Vara opened three bank accounts at the HSBC office where Esses and Romano worked.  Vara further agreed to allow Esses and Romano to manage her investment portfolio.

28.     At about the same time, Inocenti opened her own bank accounts at HSBC without Vara's knowledge.  Inocenti also opened a bank account for Briallen at HSBC.

29.     As Esses and Romano moved on to new banks, Vara's money followed.  When Esses and Romano moved from HSBC to Barclays in Miami, Florida, at Inocenti's request, Vara transferred her money to Barclays, again opening three accounts and an investment portfolio.  In

this instance, Esses and Romano moved to "Barclays Wealth," the wealth management division of Barclays Bank, ostensibly functioning through Barclays Capital in the United States.

30.     When Esses moved again to Wells Fargo, Vara's accounts were again moved to that bank.

31.     Similarly, as Esses and Romano moved, Inocenti moved her accounts and Briallen's accounts to Barclays and Wells Fargo as well.

## III.   INOCENTI TRANSFERS MILLIONS TO HER OWN ACCOUNTS OR THE ACCOUNTS OF COMPANIES LIKE BRIALLEN

32.     Inocenti persuaded Vara to sign blank documents so Inocenti could use them for authorizing money transfers for Vara's benefit.  Inocenti assured Vara that the blank documents would only be used if the Banks needed Vara's written confirmation in order to conduct the transfer and Inocenti could not timely reach out to Vara to obtain her signature.

33.     In addition to the General Power of Attorney she fraudulently obtained, Inocenti used a variety of additional methods to transfer money from Vara's accounts to Inocenti's own accounts without Vara's knowledge and/or authorization.  Those methods included (1) printing or drafting over the aforementioned blank documents Vara had previously signed under false pretenses, (2) superimposing Vara's signature on documents Inocenti created, and (3) forging Vara's signature.  Inocenti would then fax the documents to Esses and Romano, who would process the transactions accordingly.

34.     At other times, Inocenti would verbally advise Esses and Romano to initiate a transaction between Vara's account and Inocenti's account, knowing that Esses and Romano would proceed accordingly without alerting Vara.

35.     Vara has discovered that Inocenti, with Esses and Romano's assistance, fraudulently transferred at least US $2,345,898.00 from Vara's bank accounts to bank accounts

in Inocenti's name or, upon information and belief, in the name of companies in which Inocenti, Esses, and/or Romano had a beneficial interest. Upon information and belief, Briallen was one of these companies and Inocenti was Briallen's employee and/or agent.

36. Upon information and belief, Inocenti used at least part of the illegally obtained money to fund her own investment portfolios at the Banks, with Esses and Romano's assistance and/or knowledge. Briallen also used at least part of the illegally obtained money to fund its own investment portfolios at the Banks, with Esses and Romano's assistance and/or knowledge.

37. Despite the obvious fraud, Esses and Romano never contacted Vara to obtain approval for the millions of dollars going to Inocenti's personal bank accounts or to the accounts of companies such as Briallen in which Inocenti, Esses, and/or Romano had a beneficial interest, and never conducted any due diligence to determine whether the transactions were for Vara's benefit.

38. Esses and Romano never disclosed the true status of Vara's finances during any oral or written communication with Vara, including meetings with Vara and Inocenti at the Banks' Miami offices during which the parties discussed Vara's wealth management.

39. In fact, Esses and Romano concealed the state of Vara's finances from her by having Vara's account statements mailed to their own business and home addresses.

40. The Defendant Banks did not have a commercially reasonable security procedure for securing Vara's authorization before millions of dollars were transferred from her accounts to Inocenti's accounts or to the accounts of companies such as Briallen in which Inocenti, Esses, and/or Romano had a beneficial interest, or, alternatively, the Defendant Banks failed to comply with their procedures.

41.     Moreover, the Defendant Banks did not have security procedures to prevent an employee's imprudent handling of bank account openings or, alternatively, failed to enforce their procedures in this case.

## IV.     FRAUDULENT INVESTMENTS

42.     In addition to directly transferring money from Vara's accounts to Inocenti's accounts or to the accounts of companies such as Briallen in which they had a beneficial interest, Inocenti, Esses, and Romano also advised Vara to place her money in investments that, it turned out, were designed to benefit Inocenti, Esses, and Romano, at Vara's expense.

43.     For example, Inocenti, Esses, and Romano advised Vara to place US$500,000.00 with NRD, a real estate development company, and falsely stated that the money would be invested in her name with a healthy return on her investment.

44.     Rather than place Vara's money directly with NRD, Inocenti, with Esses and Romano's assistance and/or knowledge, created Analia Vanina to serve as the vehicle for investing Vara's money into NRD.

45.     However, Inocenti gave herself a 50% interest in Analia Vanina – and thus, a 50% interest in the investment capital and all returns on investment in NRD – without disclosing that fact to Vara.

46.     Upon information and belief, Esses and Romano knew or had reason to know that Inocenti had orchestrated the NRD transaction to benefit herself, to Vara's detriment.

47.     Vara has not received any distributions from the NRD investment and, despite requests for information, has been unable to determine what happened to her money.

48.     Esses, Romano, and Inocenti later advised Vara of another investment opportunity with NRD, this one for a real estate project in Peru.

49.     However, rather than invest Vara's money for Vara's benefit, Inocenti transferred US$450,000.00 to herself from Vara's U.S. account(s) and invested that money in Miami-based NRD as if it were Inocenti's investment.  Inocenti did not advise Vara of that fact, nor did Esses or Romano, who, upon information and belief, knew or had reason to know of Inocenti's use of Vara's money to finance the investment for Inocenti herself.

50.     Inocenti also transferred money to herself from Vara's accounts to purchase, on her own behalf, a condominium unit at Canvas located at 90 NE 17th Street Miami, Florida 33132 ("Canvas Condo").

51.     Upon information and belief, Esses and Romano knew, or had reason to know, that Inocenti had made an unauthorized transfer of Vara's funds to herself for the purpose of purchasing the Canvas Condo.

52.     Romano also served as the realtor for the Canvas Condo transaction and personally benefited from it.

## V.      VARA LEARNS OF DEFENDANTS' DECEIT

53.     At Vara's request, Nicolas Culotta Vara ("Nicolas"), one of Vara's sons, sought to review Inocenti's handling of Vara's finances.  His review of the information Inocenti permitted him to view revealed that Vara's finances were not in good shape.

54.     Around the same time, Vara received the following email from a person identifying herself as Maria Gutierrez (maryguti.usa@gmail.com):

> Hello, Vanina, I cannot be an accomplice any longer. You have
> been a very good person, and you need to know this. ANALIA
> [INOCENTI] DEFRAUDED YOU.  She diverted millions from
> your account to hers.  TOMI[1] IS AN ACCOMPLICE.  She also
> took funds from your investments. SHE DEFRAUDED YOU and
> committed FRAUDULENT MANAGEMENT.   You needed to

---

[1]     On information and belief, "TOMI" is Esses.

10

know because you are a good person. Please pardon the way [I've told you].

*See* Exhibit "B."

55. Upon further investigation, Vara and Nicolas discovered several unauthorized transfers to bank accounts in Inocenti's name or, upon information and belief, the name of companies in which Inocenti, Esses, and/or Romano had a beneficial interest, including Briallen.

56. Vara fired Inocenti and demanded a full accounting and her files. Inocenti has yet to provide Vara with all requested documents.

57. Vara also contacted NRD to inquire about her US$500,000.00 investment. Vara learned that NRD was planning to make certain distributions of money, but was unable to receive them since Inocenti made the investment in Analia Vanina's name. Vara also learned that Analia Vanina had been administratively dissolved, and NRD would not make any new distributions without the approval of Inocenti, who had a 50% interest in Analia Vanina.

58. Inocenti has refused to acknowledge that Vara – not Analia Vanina – was the one who invested US$500,000.00 in NRD.

## VI.   DEFENDANTS' ACTIONS DAMAGED VARA

59. Upon information and belief, approximately half of Vara's wealth -- that is, nearly US$10 million – disappeared as a result of Defendants' conduct.

60. Vara has retained the undersigned law firm and is obligated to pay them a reasonable fee.

61. All conditions precedent to this action have been performed, excused, waived, or would otherwise prove futile.

## COUNT I
## Breach of Fiduciary Duty
### (Against Inocenti)

62.     Vara re-alleges paragraphs 1 to 61 as if set forth fully herein.

63.     Vara reposed her trust in Inocenti by making Inocenti her attorney-in-fact, financial advisor, and accountant and by placing Inocenti in charge of managing her finances.

64.     Inocenti owed Vara certain fiduciary duties, including the duties of care, loyalty, good faith, and the duty of disclosure.

65.     Inocenti breached her fiduciary duties to Vara by, among other actions, engaging in self-dealing to enrich herself; making unauthorized transfers from Vara's accounts; authorizing transactions that were otherwise detrimental to Vara; failing to exercise due care for Vara's interests; and, without limitation, failing to disclose material facts to Vara while managing Vara's wealth.

66.     As a result of Inocenti's conduct, Vara has been damaged.

WHEREFORE, Vara demands judgment against Inocenti for damages, interest as allowed by law, and any other relief this Court deems just and appropriate.  Vara reserves the right to amend her pleadings to assert a claim for punitive damages, as provided by Florida law.

## COUNT II
## Fraud
### (Against Inocenti)

67.     Vara re-alleges paragraphs 1 to 61 as if set forth fully herein.

68.     Inocenti knowingly made multiple misrepresentations, including the following:

a.      Inocenti falsely stated that she was a financial advisor;

b.      Inocenti falsely asserted that she was capable of managing Vara's wealth and would (1) make payments and transfers of money to and from Vara's

bank accounts for Vara's expenses and/or as requested and authorized by Vara, (2) consult on and recommend investments to grow Vara's wealth, and (3) keep an accurate accounting of Vara's finances;

c.    Inocenti falsely stated to Vara that her finances were in good condition when in fact Inocenti was taking Vara's money and diminishing Vara's wealth by (1) transferring money to herself or to companies like Briallen from Vara's accounts by forging Vara's authorization and (2) making several investments for herself with Vara's money without advising Vara.

69.    Inocenti made the above-mentioned misrepresentations in-person at various meetings, including meetings with Esses and Romano at the Banks' Miami offices.  Inocenti also made the misrepresentations via telephone calls with Vara, including calls from Inocenti's cell phone to Vara's cell phone.

70.    Inocenti made these misrepresentations with the intent of inducing Vara to rely on them and permit Inocenti access to her money or continue to permit such access.

71.    Vara relied on Inocenti's misrepresentations and appointed Inocenti as her financial advisor, wealth manager, and attorney-in-fact.  Vara also granted Inocenti access to her money and continued to permit such access in such reliance.

72.    As a result of Inocenti's conduct, Vara was damaged.

WHEREFORE, Vara demands judgment against Inocenti for damages, interest as allowed by law, and any other relief this Court deems just and appropriate.  Vara reserves the right to amend her pleadings to assert a claim for punitive damages, as provided by Florida law.

## COUNT III
### Fraudulent Concealment
### (Against Inocenti)

73.     Vara re-alleges paragraphs 1 to 61 as if set forth fully herein.

74.     Inocenti, acting as Vara's attorney-in-fact, financial advisor, and accountant, intentionally omitted the disclosure of material facts to Vara, including her failure to disclose that she and companies like Briallen were the beneficiaries of multiple money transfers from Vara's accounts while advising Esses and Romano to initiate the same transactions. Inocenti also concealed her plan of using Vara's US$500,000 to invest in NRD through Analia Vanina, a company in which Inocenti had a 50% interest.

75.     Inocenti failed to disclose these material facts in various meetings she had with Vara, including meetings with Esses and Romano at the Banks' Miami offices. Inocenti also hid these material facts in multiple telephone calls she had with Vara, including calls from Inocenti's cell phone to Vara's cell phone.

76.     Had Inocenti disclosed these material facts to Vara, she would not have permitted Inocenti access to her money or continue to permit such access. Moreover, Vara would not have used US$500,000.00 to invest in NRD.

77.     As a result of Inocenti's conduct, Vara was damaged.

WHEREFORE, Vara demands judgment against Inocenti for damages, interest as allowed by law, and any other relief this Court deems just and appropriate. Vara reserves the right to amend her pleadings to assert a claim for punitive damages, as provided by Florida law.

## COUNT IV
### Constructive Fraud
### (Against Inocenti)

78.     Vara re-alleges paragraphs 1 to 77 as if fully set forth and incorporated herein.

79.     Inocenti owed Vara a fiduciary duty as her financial advisor, accountant, and attorney-in-fact.

80.     Inocenti abused her position as a fiduciary to take an unconscionable advantage over Vara, by *inter alia*, engaging in self-dealing to enrich herself, making unauthorized transfers from Vara's accounts for her own benefit or to the benefit of companies like Briallen, authorizing transactions that were otherwise detrimental to Vara, concealing the true state of Vara's finances from Vara, and, without limitation, failing to disclose material facts to Vara while managing Vara's wealth.

81.     As a result of Inocenti's actions, Vara has been damaged.

WHEREFORE, Vara demands judgment against Inocenti for damages, interest as allowed by law, and any other relief this Court deems just and appropriate.  Vara reserves the right to amend her pleadings to assert a claim for punitive damages, as provided by Florida law.

## COUNT V
### Negligent Misrepresentation
### (Against Inocenti)

82.     Vara re-alleges paragraphs 1 to 61 as if set forth fully herein.

83.     Inocenti made multiple misrepresentations of material facts to Vara, which included the following:

a.     Inocenti falsely stated that she was a financial advisor;

b.     Inocenti falsely asserted that she was capable of managing Vara's wealth and would (1) make payments and transfers of money to and from Vara's bank accounts for Vara's expenses and/or as requested and authorized by Vara, (2) consult on and recommend investments to grow Vara's wealth, and (3) keep an accurate accounting of Vara's finances;

15

c.   Inocenti falsely stated to Vara that her finances were in good condition when in fact Inocenti was taking Vara's money and diminishing Vara's wealth by (1) transferring money to herself or to companies like Briallen from Vara's accounts, and (2) making several investments for herself with Vara's money without advising Vara.

84.   Inocenti was negligent in making those statements because she knew or should have known these representations were false or made these misrepresentations without knowledge of their truthfulness.

85.   Inocenti made these misrepresentations with the intent to induce Vara to rely on them and permit Inocenti access/continued access to her money.

86.   Vara justifiably relied on Inocenti's misrepresentations and appointed Inocenti as her financial advisor, wealth manager, and attorney-in-fact. Vara also granted Inocenti access to her money and continued to permit such access.

87.   As a result of Inocenti's conduct, Vara was damaged.

WHEREFORE, Vara demands judgment against Inocenti for damages, interest as allowed by law, and any other relief this Court deems just and appropriate. Vara reserves the right to amend her pleadings to assert a claim for punitive damages, as provided by Florida law.

## COUNT VI
## Conversion
## (Against Inocenti)

88.   Vara re-alleges paragraphs 1 to 61 as if set forth fully herein.

89.   Inocenti transferred US$2,345,898.00 from Vara's bank accounts to her own bank accounts or the accounts of companies like Briallen and exercised control and dominion over the funds in a manner inconsistent with Varas's rights.

90.    Inocenti has also exercised dominion and control over Vara's US$500,000.00 investment in NRD in a manner that is inconsistent with Vara's rights.

91.    Vara has demanded the return of the funds taken from her accounts and the interest on the investment.

92.    Inocenti has refused to return what she improperly obtained.

93.    Because of Inocenti's actions, Vara has been damaged.

WHEREFORE, Vara demands judgment against Inocenti, interest as allowed by law, and any other relief this Court deems just and appropriate.

## COUNT VII
### Accounting
### (Against Inocenti)

94.    Vara re-alleges paragraphs 1 to 66 as if fully set forth herein.

95.    Vara and Inocenti had a fiduciary relationship.

96.    In violation of her fiduciary duties of care, loyalty, good faith, and disclosure, Inocenti misappropriated Vara's money for her own gain. Among other things, Inocenti engaged in self-dealing to enrich herself; made unauthorized transfers from Vara's accounts; authorized transactions that were otherwise detrimental to Vara; failed to exercise due care for Vara's interests; and, without limitation, failed to disclose material facts to Vara while managing Vara's wealth.

97.    She also managed Analia Vanina in an improper and illegal manner in order to defraud Vara. Until the moment it was administratively dissolved, Inocenti used Analia Vanina with the exclusive purpose of serving as the vehicle for taking Vara's money.

98.    Inocenti has yet to provide Vara with a full accounting and her files. Therefore, Plaintiff Vara has been unable to obtain a definite final amount of the payments and investments Inocenti made on Vara's behalf as her attorney-in-fact and financial advisor.

99.    Because of the number and type of transactions that are in dispute, the time period over which they may have been made and which has passed since the inception of Inocenti's activities, and the lack of adequate written records, Plaintiff Vara's remedy at law is inadequate and will not be as expeditious as it is in equity.

WHEREFORE, Plaintiff Vara request judgment against Defendant Inocenti for an accounting, and such other and further relief as this Court may deem just and proper.

## COUNT VIII
## Unjust Enrichment
## (Against Inocenti and Briallen)

100.    Vara re-alleges paragraphs 1 to 77 as if fully set forth herein.

101.    Vara conferred a benefit on Inocenti when she gave her access to Vara's money through a fiduciary relationship, whereupon Inocenti engaged in a pattern of improper transactions that benefited Inocenti.

102.    Vara also conferred a benefit on Briallen through Inocenti's improper transactions as Vara's financial advisor, wealth manager, and attorney-in-fact that benefited Briallen.

103.    Inocenti and Briallen voluntarily accepted and retained those benefits.

104.    The circumstances are such that it would be inequitable for Inocenti and Briallen to retain the benefits they obtained through access to Vara's funds without paying the fair value thereof.

WHEREFORE, Vara demands judgment against Inocenti and Briallen for damages, interest as allowed by law and any additional relief this Court deems just and proper.

## COUNT IX
## Equitable Lien
### (Against Inocenti and Briallen)

105.    Vara re-alleges paragraphs 1 to 61 as if fully set forth herein.

106.    Vara seeks the imposition of an equitable lien on Inocenti's bank accounts and investment portfolio, her real estate interest in the Canvas Condo, and her 50% interest in Analia Vanina.  Vara also seeks the imposition of an equitable lien on Briallen's bank accounts and investment portfolio.

107.    Inocenti made multiple fraudulent misrepresentations to Vara as outlined in paragraphs 67 to 81 above.  Relying on these misrepresentations, Vara placed Inocenti in a position of trust.  That position allowed Inocenti to siphon millions of dollars from Vara.

108.    Inocenti's fraudulent misrepresentations deprived Vara of her lawful ownership of at least US$2,845,898, an amount of money equal to the sum of US$2,345,898.00 and US $500,000.00.  The US$2,345,898.00 is the amount of money Inocenti transferred from Vara's accounts into her own bank accounts or into the accounts of companies in which Inocenti, Esses, and/or Romano had a beneficial interest, including Briallen, based on what Vara has discovered so far.  The US $500,000.00 is the amount of money Inocenti took from Vara to make a purported investment in NRD.

109.    Furthermore, Inocenti and Briallen were unjustly enriched as outlined in paragraphs 100 to 104 above.  Inocenti not only took Vara's money, but she profited from it by, among other things, gaining a 50% interest in Analia Vanina, and by gaining an ownership interest in the Canvas Condo. Briallen also received and retained Vara's illegally transferred money in its bank accounts.

110.    Absent the intervention of this Court through equity and the imposition of an equitable lien in Vara's favor for the above-referenced property, Vara may well be without an adequate remedy at law.

WHEREFORE, Vara demands judgment of this Court imposing an equitable lien upon Inocenti's bank accounts and investment portfolios, her property interest at Canvas, and her 50% interest in Analia Vanina, LLC in the amount of US$2,845,898.  Vara also demands judgment of this Court imposing an equitable lien upon Briallen's bank accounts and investment portfolios. She additionally demands judgment further directing that, absent satisfaction in a reasonable period set by this Court, US$2,845,898 shall be transferred to Vara through the seizure of Inocenti and Briallen's bank accounts, liquidation of their investment portfolios, and foreclosure and sale of Inocenti's interest in the Canvas Condo, and any property that may be owned by Analia Vanina to enforce the equitable lien and award Vara the costs incurred in connection herewith.

## COUNT X
### Declaratory Judgment
### (Against Inocenti, Analia Vanina, and NRD)

111.    Vara re-alleges paragraphs 1 to 61 as if fully set forth herein.

112.    Vara has a bona fide, actual, present, and practical need for a declaratory judgment declaring that the US$500,000.00 investment in NRD, and the rights to any and all distributions resulting from this investment, belong completely to Vara.

113.    Inocenti, Esses, and Romano fraudulently induced Vara to give Inocenti US$500,000.00 for an alleged investment with NRD.  Rather than place Vara's money directly with NRD, Inocenti placed Vara's money in NRD through Analia Vanina, a company in which Inocenti has a 50% interest and Vara has the remaining 50%.

114.    As a result of Inocenti's actions and the dissolution of Analia Vanina, NRD is currently demanding that Vara obtain Inocenti's authorization in order to receive the investment's distributions and recover her US$500,000.00.   Nevertheless, Inocenti refuses to acknowledge that the US$500,000.00 investment, and any and all distributions stemming from it, fully belong to Vara.

115.    Vara believes she – not Analia Vanina – is entitled to 100% of the NRD investment and any and all distributions resulting from it.   Yet, Inocenti -who is a member of Analia Vanina - and NRD - that is in possession of the US$500,000.00 investment and its pertinent distributions - claim that Vara is only entitled to 50% of the investment and potential distributions given her 50% ownership in Analia Vanina.   Therefore, Vara on one side and Analia Vanina, Inocenti, and NRD on the other side, have an actual, present, adverse and antagonistic interest in this matter, either in fact or law.

116.    In such circumstances, Vara's rights over the US$500,000.00 and any and all distributions of the NRD investment depend upon the facts or the law applicable to the facts; and the declaratory relief sought herein is not merely the giving of legal advice by the Court.

WHEREFORE, Vara demands a declaratory judgment declaring that the US$500,000.00 investment in NRD and any and all distributions resulting from this investment belong completely to Vara, and any additional relief this Court deems just and proper.

### COUNT XI
### Civil Conspiracy
### (Against Inocenti, Esses, Romano)

117.    Vara re-alleges paragraphs 1 to 61 and paragraphs 67 to 81 as if fully set forth herein.

118. Defendants Inocenti, Esses, and Romano entered into an express or implied agreement among themselves to unlawfully defraud Vara and enrich themselves at Vara's expense.

119. Inocenti performed one or more overt acts in furtherance of the conspiracy, as more particularly alleged herein, including but not limited to:

    a.    Asserting that she was a knowledgeable financial planner in various meetings and multiple telephone calls she had with Vara;

    b.    Directing Vara to open accounts with the Banks and deposit over US$20,000,000.00, which Inocenti did during various meetings at the Banks' offices and during multiple telephone calls she had with Vara;

    c.    Directing Vara to allow Esses and Romano to manage her investment portfolio; which Inocenti did during various meetings at the Banks' offices and during multiple telephone calls she had with Vara;

    d.    Opening bank accounts and portfolios in the same Banks for her and for Briallen; which Inocenti did during various meetings at the Banks' offices and during multiple telephone calls she had with Esses and/or Romano.

    e.    Appointing Esses and Romano as her financial advisors and as the financial advisors for Briallen; which Inocenti did during various meetings at the Banks' offices and during multiple telephone calls she had with Esses and/or Romano.

    f.    Creating a false paper trail of transaction approvals in her office and/or residence located in Buenos Aires, Argentina, while using Vara's signature on blank documents, copied documents, or forged documents;

g.   Sending the above-mentioned paper trail via fax to Esses and Romano's office at each of the Banks;

h.   Directing Vara to invest US$500,000 in NRD, which Inocenti did during various meetings at the Banks' offices and during multiple telephone calls she had with Vara; and

i.   Creating Analia Vanina in Miami-Dade County, Florida without Vara's knowledge, giving herself an interest in the company, and then using Vara's US$500,000 to invest in NRD in Florida through Analia Vanina.

120.   Esses and Romano also performed one or more overt acts in furtherance of the conspiracy, as more particularly alleged herein, including but not limited to:

a.   Opening bank accounts and starting investment portfolios for Inocenti and Briallen in the same Miami-Dade County, Florida Banks as Vara's accounts in order to assist Inocenti in siphoning out Vara's money;

b.   Serving as Vara's financial advisors and bank representatives at the Banks in Miami-Dade County, Florida and authorizing any transaction effectuated by Inocenti, whether or not Vara authorized the transaction, in Miami-Dade County, Florida;

c.   Drafting and sending internal correspondence to the Banks in Miami-Dade County, Florida so that Vara's bank account and investment portfolio statements would be sent to their own homes and/or their offices at the Banks;

d.   Not informing Vara of any transactions emanating from Vara's bank accounts that they knew were being performed without Vara's consent,

which they failed to do in oral and written communications, particularly in meetings with Vara at the Miami office of the Banks;

e.    Not disclosing to Vara the true status of Vara's bank accounts and investments, which they failed to do in oral and written communications, particularly in meetings with Vara at the Miami office of the Banks;

f.    Making recommendations to Inocenti and Briallen on how to use the illegally acquired money to grow Inocenti's investment portfolio; which Esses and Romano did during various meetings at the Banks' offices and during multiple telephone calls they had with Inocenti.

g.    Recommending that Vara allow Inocenti to use US$500,000 to invest in NRD, which Esses and Romano did during various meetings they had with Vara at the Banks' Miami offices;

121.    Romano also assisted Inocenti as a realtor in the purchase of a property interest in the Canvas Condo, knowing that the money being used for the investment belonged to Vara, not Inocenti. The purpose of the conspiracy was to commit a tort or civil wrong – *i.e.*, to defraud Vara of her wealth.

122.    The combination of the above-referenced actions provided Inocenti, Esses, and Romano with a peculiar power of coercion or influence over Vara.

123.    Inocenti, Esses, and Romano concerted their actions in this case with the malicious motive of defrauding Vara of her wealth.

124.    Because of Inocenti, Esses, and Romano's actions, Vara has been damaged.

WHEREFORE, Vara demands judgment against Defendants Inocenti, Esses, and Romano for damages, interest as allowed by law and any additional relief this Court deems just

24

and proper. Vara reserves the right to amend her pleadings to assert a claim for punitive damages, as provided by Florida law.

### COUNT XII
### Breach of Fiduciary Duty
### (Against Esses and Romano)

125.    Vara re-alleges paragraphs 1 to 61 as if fully set forth herein.

126.    Esses and Romano, as financial advisors to Vara, owed Vara certain fiduciary duties. These included the duty of care, the duty of loyalty, the duty to act in good faith, and the duty of disclosure.

127.    Esses and Romano breached their fiduciary duties by facilitating Inocenti's theft of Vara's money. Specifically, Esses and Romano never contacted Vara to obtain approval for the millions of dollars going to Inocenti's personal bank accounts or to the accounts of companies such as Briallen, nor confirmed with Vara whether those transactions were for Vara's benefit, despite sufficient reason to question the validity of the transactions. Esses and Romano engaged in the transactions without conducting the proper due diligence.

128.    Esses and Romano also breached their duties by never providing Vara with a true state of her financial accounts. Instead, they falsely reported to Vara that her financial accounts were in good condition.

129.    Esses and Romano also made investment recommendations to Vara while knowing that Inocenti would use those investments to funnel even more of Vara's money to herself.

130.    Esses and Romano also breached their duty by facilitating investment transactions when they knew or should have known that Vara did not provide Inocenti authorization to use Vara's money to invest on Inocenti's behalf.

131.    Because of Esses and Romano's conduct, Vara has been damaged.

WHEREFORE, Vara demands judgment against Esses and Romano for damages, interest as allowed by law, and any additional relief this Court deems just and proper.

### COUNT XIII
### Fraud
### (Against Esses and Romano)

132.    Vara re-alleges paragraphs 1 to 61 as if set forth fully herein.

133.    Esses and Romano knowingly made the following misrepresentations:

a.    Esses and Romano falsely asserted to Vara that her finances were in good condition when in fact they knew that Inocenti or companies such as Briallen were taking Vara's money and diminishing Vara's wealth.

b.    Esses and Romano falsely asserted that they would recommend investments to grow Vara's wealth, including investments in NRD.

c.    Esses and Romano falsely stated that Inocenti would make a US$500,000 investment in NRD on Vara's behalf, and that Vara would receive returns and profits as a result of this investment.

134.    Esses and Romano made the above-mentioned misrepresentations at various meetings between the parties, including meetings with Vara and Inocenti at the Banks' Miami offices.

135.    Esses and Romano made these misrepresentations with the intent of inducing Vara to rely on them and (1) continue to permit Inocenti access to her money; (2) continue to use Esses and Romano as her financial advisors; and (3) furnish Inocenti with US$500,000 to make a purported investment in NRD.

136.     Vara relied on Esses and Romano's misrepresentations and (1) continued to permit Inocenti access to her money; (2) continued to use Esses and Romano as her financial advisors at the Banks; and (3) furnished Inocenti with US$500,000 to make an investment in NRD.

137.     As a result of Esses and Romano's conduct, Vara was damaged.

WHEREFORE, Vara demands judgment against Esses and Romano for damages, interest as allowed by law, and any other relief this Court deems just and appropriate.  Vara reserves the right to amend her pleadings to assert a claim for punitive damages, as provided by Florida law.

### COUNT XIV
### Fraudulent Concealment
### (Against Esses and Romano)

138.     Vara re-alleges paragraphs 1 to 61 as if set forth fully herein.

139.     Esses and Romano, acting as Vara's financial advisors, omitted the disclosure of material facts to Vara, including the following:

a.     Inocenti's transfer of millions of dollars from Vara's bank accounts into her own bank accounts or accounts in the name of companies in which Inocenti, Esses, and/or Romano had a beneficial interest, including Briallen.

b.     Inocenti's investments in the same NRD projects in which Vara was supposedly making her investments.

c.     Inocenti's use of Vara's money to invest in NRD for Inocenti's own benefit.

d.      Inocenti's use of Analia Vanina as a vehicle for taking Vara's money, including the US$500,000 Vara allowed Inocenti to invest on Vara's behalf.

140.    Esses and Romano failed to disclose those material facts in various meetings they had with Vara, including meetings with Vara and Inocenti at the Banks' Miami offices.

141.    Had Inocenti disclosed these material facts to Vara, she would not have: (1) permitted Inocenti access to her money or continue to permit such access; (2) continued to use Esses and Romano as her financial advisors; or (3) furnished Inocenti with US$500,000 to make an investment in NRD.

142.    As a result of Esses and Romano's conduct, Vara was damaged.

WHEREFORE, Vara demands judgment against Esses and Romano for damages, interest as allowed by law, and any other relief this Court deems just and appropriate.  Vara reserves the right to amend her pleadings to assert a claim for punitive damages, as provided by Florida law.

## COUNT XV
### Constructive Fraud
### (Against Esses and Romano)

143.    Vara re-alleges paragraphs 1 to 61 and 123 to 140 as if fully set forth and incorporated herein.

144.    Esses and Romano owed Vara a fiduciary duty as her financial advisors.

145.    Esses and Romano abused their position as fiduciaries by assisting Inocenti in her improper and illegal activities with regards to Vara's money, including diverting Vara's money to Inocenti's accounts and investments that benefited Inocenti and companies in which Inocenti, Esses, and/or Romano had a beneficial interest, including Briallen..

146.    As a result of Esses and Romano's actions, Vara has been damaged.

28

WHEREFORE, Vara demands judgment against Esses and Romano for damages, interest as allowed by law, and any other relief this Court deems just and appropriate. Vara reserves the right to amend her pleadings to assert a claim for punitive damages, as provided by Florida law.

**COUNT XVI**
**Negligent Misrepresentation**
**(Against Esses and Romano)**

147.    Vara re-alleges paragraphs 1 to 61 as if set forth fully herein.

148.    Esses and Romano made multiple misrepresentations of material facts to Vara, which included the following:

    a.    Esses and Romano falsely asserted to Vara that her finances were in good condition when in fact they knew that Inocenti or companies like Briallen were taking Vara's money and diminishing Vara's wealth.

    b.    Esses and Romano falsely asserted that they would recommend investments to grow Vara's wealth, including investments in NRD.

    c.    Esses and Romano falsely stated that Inocenti would make an investment of US$500,000 in NRD on Vara's behalf, and that Vara would receive returns and profits as a result of this investment.

149.    Esses and Romano were negligent in making these statements because they knew or should have known these representations were false or made these misrepresentations without knowledge of their truthfulness.

150.    Esses and Romano made these misrepresentations with the intent of inducing Vara to rely on them and (1) continue to permit Inocenti access to her money; (2) continue to use Esses and Romano as her financial advisors at the Banks; and (3) furnish Inocenti with US$500,000 to make an investment in NRD.

151.    Vara justifiably relied on Esses and Romano's misrepresentations and (1) continued to permit Inocenti access to her money; (2) continued to have Esses and Romano as her financial advisors at the Banks; and (3) furnished Inocenti with US $500,000 for making an alleged investment in NRD.

152.    As a result of Esses and Romano's conduct, Vara was damaged.

WHEREFORE, Vara demands judgment against Inocenti for damages, interest as allowed by law, and any other relief this Court deems just and appropriate.   Vara reserves the right to amend her pleadings to assert a claim for punitive damages, as provided by Florida law.

**COUNT XVII**
**Aiding and Abetting Fraud**
**(Against Esses and Romano)**

153.    Vara re-alleges paragraphs 1 to 61 and 67 to 81 as if fully set forth herein.

154.    Esses and Romano knew of the fraud Inocenti was perpetrating on Vara.

155.    Esses and Romano substantially aided in Inocenti's fraudulent scheme to divest Vara of millions of dollars, by, among other things:

 a. Opening bank accounts and investment portfolios in Miami-Dade County, Florida for Inocenti and Briallen in the same Banks as Vara with the knowledge that those accounts and portfolios would be used to commit a fraud against Vara;

 b. While as Vara's financial advisors and bank representatives, authorizing any transaction effectuated by Inocenti at the Miami office of the Banks, whether or not the transaction was authorized by Vara;

 c. Not informing Vara of any transactions emanating from Vara's bank accounts that they knew were being performed without Vara's consent,

which they failed to do in any oral or written communications, particularly in any meetings with Vara at the Miami office of the Banks;

d. Never contacting Vara concerning any transaction effectuated by Inocenti despite owing Vara fiduciary duties, which they failed to do in any oral or written communications;

e. Not disclosing to Vara the true status of Vara's bank accounts and investments, which they failed to do in any oral or written communications, particularly in any meetings with Vara at the Miami office of the Banks;

f. Assisting Inocenti and Briallen in using the illegally acquired money to grow their own portfolio by advising them as to various businesses and operations in which they could invest the money they took from Vara; Recommending to Vara that she furnish Inocenti with US$500,000 to make a purported investment in NRD during various meetings Esses and Romano had with Vara at the Miami office of the Banks; and

156. Romano also substantially aided in Inocenti's fraudulent scheme to divest Vara of millions of dollars by assisting her as a realtor in the purchase of a property interest in the Canvas Condo. Romano arranged this transaction while knowing Inocenti was using Vara's money to pay for the property.

157. Because of Esses and Romano's actions, Vara has been damaged.

WHEREFORE, Vara demands judgment against Esses and Romano for damages, interest as allowed by law, and any additional relief this Court deems just and proper.

## COUNT XVII
### Aiding and Abetting Breach of Fiduciary Duty
### (Against Esses and Romano)

158.    Vara re-alleges paragraphs 1 to 66 as if fully set forth herein.

159.    Esses and Romano knew Inocenti was breaching her fiduciary duties to Vara.

160.    Esses and Romano substantially aided in Inocenti's breach of her fiduciary duties, by, among other things:

    a.    Opening bank accounts and investment portfolios for Inocenti and Briallen in the same Banks as Vara with the knowledge that those accounts and portfolios would be used to commit a fraud against Vara;

    b.    While as Vara's financial advisors and bank representatives, authorizing any transaction effectuated by Inocenti at the Banks' Miami offices, whether or not Vara authorized the transaction;

    c.    Not informing Vara of any transactions emanating from Vara's bank accounts that they knew were being performed without Vara's consent in any oral or written communications, particularly in any meetings with Vara at the Banks' Miami offices;

    d.    Never contacting Vara concerning any transaction Inocenti effectuated despite owing Vara fiduciary duties themselves;

    e.    Not disclosing to Vara the true status of Vara's bank accounts and investments in any oral or written communications, particularly in any meetings with Vara at the Banks' Miami offices;

     f.       Assisting Inocenti and Briallen in using the illegally acquired money to grow their own portfolio by advising them as to various businesses and operations in which they could invest the money they took from Vara; and

     g.      Recommending that Vara use US$500,000 to invest in NRD during various meetings that Esses and Romano had with Vara at the Banks' Miami offices.

161.     Romano also aided in Inocenti's breach of her fiduciary duties by assisting her as a realtor in the purchase of a property interest in the Canvas Condo. Romano arranged this transaction while knowing Inocenti was using Vara's money to pay for the property.

162.     Esses and Romano's substantial assistance in Inocenti's breaches of her fiduciary duties damaged Vara.

WHEREFORE, Vara demands judgment against Esses and Romano for damages, interest as allowed by law, and any additional relief this Court deems just and proper.

## COUNT XIX
### Negligence
### (Against Esses and Romano)

163.     Vara re-alleges paragraphs 1 to 61 as if fully set forth herein.

164.     Esses, as Vara's financial advisor and the Banks' representative, and Romano, as the Banks' representative, owed Vara a duty of reasonable care to protect her financial interests.

165.     Esses and Romano breached that duty by, among other actions:

     a.      Failing to follow security procedures while opening accounts and investment portfolios for Vara, Inocenti, and Briallen;

b.    Failing to exercise commercially reasonable security procedures in authorizing transactions from Vara's accounts to Inocenti and Briallen's accounts;

c.    Failing to provide Vara with the true state of her finances;

d.    Failing to obtain approval from Vara for transactions transferring money from Vara's accounts to Inocenti and Briallen's accounts; and

e.    Failing to exercise due diligence in recommending and managing Vara's investments.

166.    As a direct and proximate cause of Esses and Romano's negligence, Vara suffered damages.

WHEREFORE, Vara demands judgment against Esses and Romano for damages, interest as allowed by law, and any additional relief this Court deems just and proper.

### COUNT XX
### Accounting
### (Against Esses and Romano)

167.    Vara re-alleges paragraphs 1 to 61 and 125 to 131 as if fully set forth herein.

168.    Vara and Esses and Romano had a fiduciary relationship.

169.    In violation of their fiduciary duties of care, loyalty, good faith, and disclosure, Esses and Romano assisted Inocenti in misappropriating Vara's money. Among other things, Esses and Romano concealed from Vara the status of her finances at the Banks, while Inocenti transferred millions of dollars from Vara's bank accounts into her own bank accounts and to the accounts of companies like Briallen, and used Vara's money to make investments for Inocenti's own benefit. In fact, Esses and Romano concealed the status of Vara's finances from her by having Vara's account statements mailed to their own business and home addresses.

170.    Esses and Romano have yet to provide Vara with a full accounting and the records they hid from her.  Therefore, Plaintiff Vara has been unable to obtain a definite final amount of the money that Esses and Romano authorized to be withdrawn, transferred, and/or debited from her bank accounts, including the amount of the money Inocenti transferred from Vara's bank accounts into her own bank accounts and Briallen's accounts.

171.    Because of the number and type of transactions that are in dispute, the time period over which they may have been made and which has passed since the inception of Inocenti's activities, and Defendants Esses and Romano's concealment of the written records, Plaintiff Vara's remedy at law is inadequate and will not be as expeditious as it is in equity.

WHEREFORE, Plaintiff Vara requests judgment against Defendants Esses and Romano for an accounting, and such other and further relief as this Court may deem just and proper.

## COUNT XXI
### Vicarious Liability
### (Against the Banks)

172.    Vara re-alleges paragraphs 1 to 61 and 117 to 166 as if fully set forth herein.

173.    Esses and Romano were employees of the Banks during the time in which their actions and omissions contributed to the loss of millions of dollars for Vara.

174.    Esses and Romano's actions and omissions arose either within the apparent scope of their authority with the Banks or in furtherance of the Bank's interests.

WHEREFORE, Vara demands judgment against the Banks for damages, interest as allowed by law, and any additional relief this Court deems just and proper.

## COUNT XXII
### Negligence
### (Against the Banks)

175.    Vara re-alleges paragraphs 1 to 61 as if fully set forth herein.

176.     The Banks owed Vara a duty of care.  The Banks failed in exercising their duty of care to Vara by, among other things:

    a.    Failing to follow security procedures while opening bank accounts and investment portfolios for Vara, Inocenti, and Briallen;

    b.    Failing to exercise commercially reasonable security procedures in authorizing transactions from Vara's accounts to Inocenti and Briallen's accounts;

    c.    Failing to provide Vara with the true state of her finances;

    d.    Failing to obtain approval from Vara for transactions transferring money from Vara's accounts to Inocenti and Briallen's accounts;

    e.    Failing to exercise due diligence in recommending and managing Vara's investments;

    f.    Not having in place security procedures to prevent an employee's imprudent handling of bank account openings, or alternatively, failing to comply with such procedures; and

    g.    Not having in place commercially reasonable security procedures for verifying payment orders, or alternatively, failing to comply with such procedures;

177.     As a direct and proximate result of the Banks' negligence, Vara suffered damages.

## COUNT XXIII
## Aiding and Abetting Fraud
## (Against Briallen)

178.     Vara re-alleges paragraphs 1 to 61 and 67 to 81 as if fully set forth herein.

179.   Briallen knew of the fraud Inocenti was perpetrating on Vara.

180.   Briallen substantially aided in Inocenti's fraudulent scheme to divest Vara of millions of dollars, by, among other things, knowingly receiving and retaining Vara's illegally transferred money on its bank accounts.

181.   Because of Briallen's actions, Vara has been damaged.

WHEREFORE, Vara demands judgment against Briallen for damages, interest as allowed by law, and any additional relief this Court deems just and proper.

## COUNT XXIV
### Aiding and Abetting Breach of Fiduciary Duty
### (Against Briallen)

182.   Vara re-alleges paragraphs 1 to 66 as if fully set forth herein.

183.   Briallen knew Inocenti was breaching her fiduciary duties to Vara.

184.   Briallen substantially aided in Inocenti's breach of her fiduciary duties, by, among other things, knowingly receiving and retaining Vara's illegally transferred money on its bank accounts.

185.   Briallen's substantial assistance in Inocenti's breaches of her fiduciary duties damaged Vara.

WHEREFORE, Vara demands judgment against Briallen for damages, interest as allowed by law, and any additional relief this Court deems just and proper.

## COUNT XXV
### Vicarious Liability
### (Against Briallen)

186.   Vara re-alleges paragraphs 1 to 93 and 117 to 124 as if fully set forth herein.

187.   Inocenti was an employee and/or agent of Briallen during the time in which its actions and omissions contributed to the loss of substantial money for Vara.

188.    Inocenti's actions and omissions arose either within the apparent scope of her

authority with Briallen or in furtherance of the Briallen's interests.

WHEREFORE, Vara demands judgment against Briallen for damages, interest as

allowed by law, and any additional relief this Court deems just and proper.

### JURY TRIAL DEMAND

Plaintiff Vanina Vara hereby demands a trial by jury on all issues so triable.

DATE: March 21, 2018             Respectfully submitted:

                                 DIAZ REUS & TARG, LLP
                                 100 Southeast 2nd Street
                                 3400 Miami Tower
                                 Miami, Florida 33131
                                 Telephone: (305) 375-9220
                                 Facsimile: (305) 375-8050

                                 s/ Chad S. Purdie
                                 Michael Diaz, Jr. (Florida Bar Number: 606774)
                                 Attorney E-mail Address: mdiaz@diazreus.com
                                 Chad S. Purdie (Florida Bar Number: 41965)
                                 Attorney E-mail Address: cpurdie@diazreus.com
                                 Roland Potts (Florida Bar Number: 87072)
                                 Attorney E-mail Address: rpotts@diazreus.com

                                 Counsel for Plaintiff

# EXHIBIT "A"

[Illegible stamps and letterhead]                                              283

011135315

**PAGE 604.- FIRST COPY.- BROAD AND GENERAL POWER OF ATTORNEY FOR ADMINISTRATION AND DISPOSAL: VARA Vanina, in favor of INOCENTI Analia Hortensia.- PUBLIC DEED NUMBER TWO HUNDRED THIRTY EIGHT.-** In the city of Buenos Aires, Capital of the Argentine Republic, on August Thirty First (31st), two thousand nine (2009), before me, authorizing Notary Public, there appears Mrs. **VANINA VARA**, who claims to be Argentinian, divorced, born on May 10, 1972, bearer of National Identity Document number 22,709,003, taxpayer ID number 27-22709003-6, domiciled at Calle Oteros 2222, piso 7 "A" of the Autonomous City of Buenos Aires, a competent person whom I identify and attest under the terms of article 1002 of the Civil Code, who states as follows: That she grants a **BROAD AND GENERAL POWER OF ATTORNEY FOR ADMINISTRATION AND DISPOSAL** onto Mrs. **ANALIA HORTENSIA INOCENTI**, Argentinian, divorced, bearer of National Identity Document number 14,010,015, domiciled at Calle Oteros 1850, piso 2 "B" of the Autonomous City of Buenos Aires, so that acting for and on her behalf, she may administer, govern, dispose, and manage without limitations all movable property, real estate, businesses, loans, titles, shares, inheritance rights, securities, and any other assets that she currently owns or may subsequently acquire under any title, reason, or capacity, either in her name or jointly with her legal representative or with other people in the jurisdiction of the Republic of Argentina and abroad- **FOR THAT PURPOSE**, she authorizes her to carry out the following acts: To purchase, transfer, sell, and dispose of, in any way or form, for transfer for valuable consideration, all kinds of movable property, real estate, vehicles, automobiles, titles, stocks, securities, and loans, establishing in each instance the percentage of the joint property, in cash or installments, per unit, in a block or

I CERTIFY THAT THIS IS A TRUE COPY OF THE ORIGINAL DOCUMENT. OFFICE OF THE SECRETARY No. 10, January 5, 2017. /Illegible signature/

**Scanned by CamScanner**

[Round stamp: Association of Notaries Public]

011135315

divided, either in lots or under the horizontal property regime, at the prices, forms of payment, and any other conditions that she may see fit, paying the amounts and issuing or requesting receipts, letters of payment, and collateral or personal guarantees as may be necessary, granting and/or taking possession of the assets being sold and/or purchased.- To purchase, as the case may be, all kinds of stocks and rights, and rights over properties in possible successions proceedings or inheritances, based on prices, forms of payment, and any other conditions that may be deemed appropriate.- To accept all kinds of assets in payment of what is owed or may be owed to them in the future, as well as awards granted either by court or private settlements.- To encumber and release from the Family Property regime any real estate to be acquired or those acquired prior to this power of attorney.- To constitute and accept usufructs.- To lease and sublease, even for periods greater than five years, at the prices, forms of payment, and any other conditions that she may stipulate, signing the corresponding lease agreement and agreement to vacate the property, if appropriate, at the price, for the term, and under the conditions that she may see fit; to request guarantees, undertake renovations, charge and collect the rental amount or any other sum that may correspond to her client, providing the appropriate receipts and letters of payment; to rescind contracts, and to attend co-owner Meetings with right to speak and vote.- To charge and receive, and pay the amount of those rentals or leases, as well as any late rentals or leases, or any sum of money that may be owed to them or that they may owe, now or in the future, for any other reason, signing and demanding the corresponding receipts, cancellations, letters of payment, and/or any other documents applicable to the case, whether simple or through public deeds.- To incur in the expenditures typical of the administration and spare parts of all kinds, pay municipal and other taxes, negotiate insurance policies against fire and accidents and

**Scanned by CamScanner**

[Illegible stamps and letterhead]                                                    284

011135316

collect and receive their amounts in the event of loss, and comply fully with or enforce municipal

ordinances, healthcare services, and services from any other public institution or agency.- To hear any

issues related to common walls, being able to acquire or transfer, as the case may be, such rights, or

formalize settlements and agreements, under the prices and other conditions that she may deem

appropriate, paying or receiving their price in cash or in installments, providing or demanding the

appropriate receipts, letters of payment, and other pertinent proofs of payment, in public and private

instruments.- Confirm and ratify all relatively null and voidable acts the grantor is a party to or in which

she has an interest.- Make statements regarding the origin of money invested or to be invested.-

Receive consignments of any nature, under the conditions she may deem appropriate.- To deposit

cash, titles, stocks, and securities in any public, mixed, or private domestic or foreign banks, whether

national, provincial, or municipal, that may exist now or come into existence in the future, and in their

branches or agencies, and Savings and Insurance Institutions, and to withdraw them by drawing on

those deposits and on any deposits that may have been made or may be made in the future on behalf

of the client for any reason, whether in a checking account, time-deposit account, or savings account,

providing and signing for that purpose all the appropriate receipts, checks, or other promissory notes.-

So that in those banking institutions, she may request and receive on behalf of the principal, any

amount of money or liquid assets, whether by writing checks or other promissory notes against her

checking accounts, or by discounting bills of exchange, promissory notes, drafts, vouchers, or other

documents, signing as recipient, drawer, or endorser, with the ability to novate debts, renewals or

amortizations of all kinds of documents prior to or subsequent to this power of attorney.- To request

**I CERTIFY THAT THIS IS A TRUE
COPY OF THE ORIGINAL
DOCUMENT. OFFICE OF THE
SECRETARY No. 10,**
January 5, 2017.  /Illegible signature/

**Scanned by CamScanner**

[Round stamp: Association of Notaries Public]

011135316

letters of credit and sign all necessary documentation.- To open or close accounts.- To issue, sign, accept, draw, or endorse checks, drafts, bills of exchange, promissory notes, policies, vouchers and receipts of stocks or securities, being able to withdraw or collect the entire value expressed in them, as well as titles, securities, and any other documents of any nature, and pledge them anew.- To collect checkbooks.- To rent and renew the rental of Safety Boxes, regardless of whether they are located in the treasuries of banking institutions, trading companies, or private homes, being able to pay the amount of those rentals and their renewals and come into possession of the keys of said safety boxes, in order to store in and withdraw from them securities, stocks, titles, cash, jewelry, and anything else that may need safekeeping, without any limits as to kind.- To claim, collect, and receive any amount of money, merchandise, or securities owed to the grantor of the power of attorney, even if those obligations were established prior to this power of attorney, and regardless of whether or not they are guaranteed with mortgages, pledges, bonds, guarantees, deposits or other collateral securities, granting the corresponding cancellations and/or receipts, and releasing and returning the encumbered assets, giving and/or receiving the appropriate documentation.- Invest money – be it paper money, monetary gold, or any kind of domestic or foreign currency – in interest-bearing loans, or borrow money, setting and accepting the terms, interest rates, penalties or punitive interest, and clauses and stipulations they may deem convenient or are required of them, accepting or giving, as the case may be, the first or

**Scanned by CamScanner**

[Illegible stamps and letterhead]                                          285

011135317

second mortgages, collaterals, or antichresis guarantees or of any other nature, that will guarantee

the enforcement of all agreements.- Purchase or transfer, sell, and dispose of in any way or form, for

valuable consideration, the aforementioned real property, titles, shares, securities, and loans,

establishing coownership in each instance, in cash or installments, per unit, as a block or divided,

either in lots or under the horizontal property regime, at the prices, forms of payment, and any other

conditions that may be stipulated, paying their amounts and providing or requesting the receipts, letters

of payment, and collateral or personal guarantees that may be necessary, granting and/or taking

possession of the assets being sold and/or acquired.- To purchase, as the case may be, all kinds of

stocks and rights, and acquire rights over properties in possible successions or inheritances, at the

prices, forms of payment, and any other conditions that she may see fit.- To accept all kinds of assets

in payment of what is owed or may be owed to them in the future, as well as awards granted either by

court or private settlements.- To handle everything related to Mail and Telecommunications, Customs,

Marina, Air navigation, and Railroads; to collect any regular epistolary and telegraphic mail, packages,

parcels, valuables, and others that may come addressed to the grantor or in common with other

persons, presenting, signing, or demanding receipts, proofs of delivery, and any other documents that

may be necessary.- To enter into insurance and chartering contracts.- To carry out all the formalities

related to the licensing, registration, transfer, delivery, entry into or exit out of the country of vehicles

in the name of the principal, being able to appear before the Government of the City of Buenos Aires

and Municipalities

I CERTIFY THAT THIS IS A TRUE
COPY OF THE ORIGINAL
DOCUMENT. OFFICE OF THE
SECRETARY No. 10,
January 5, 2017. /Illegible signature/

Scanned by CamScanner

[Round stamp: Association of Notaries Public]

011135317

across the Republic, and/or Customs Office, and/or Federal Police, and/or National Registry of Chattel

Mortgages, and/or National Registry of Motor Vehicles and National or Provincial Revenue Offices,

and before dealerships and private persons, for everything relating to the pertinent procedures, for

such purpose she is authorized to appear with all kinds of files, pay stubs, and documents, and to pay

their fees and claims, demand receipts, collect bills of sales and other pertinent documents, grant and

sign all kinds of documents, including those related to the sale of vehicles owned by her client, attend

hearings, constitute domiciles, and receive notices.- Likewise, she is authorized to substitute this

power of attorney for the purpose of licensing and transferring title of vehicles before the Government

of the City of Buenos Aires and all other Municipalities across the country, and before the National

Registry of Motor Vehicles.- To represent the grantor in all legal and administrative matters, cases,

and issues of any kind or nature and in any venue or jurisdiction, to which the grantor is a legitimate

party as a plaintiff, defendant, or in any other capacity, appearing for that purpose before any and all

Higher and Lower Courts and Tribunals, National and Provincial, including Labor Courts, Domestic

Work Courts, Economic Crime Courts, and Misdemeanor Courts, Conciliation and Arbitration

Commissions, Ministries, Secretariats of State, Municipalities, Water and Sewage Services, Aguas

Argentinas S.A., Aguas y Saneamientos Argentinos, General Tax Administration (*Dirección General

Impositiva - DGI*), Federal Public Revenue Administration (*Administración Federal de Ingresos

Públicos - AFIP*), Departments of Internal Revenue and of Real Estate, Pension Funds, National Social

Security Administration (*Administración Nacional de la Seguridad Social – ANSES*), Telefónica de

Argentina S.A., Telecom Stet France Telecom S.A., Metrogas S.A., the state-owned

**Scanned by CamScanner**

[Illegible stamps and letterhead]                                                      286

011135318

Argentine mail company (*Correo Argentino*), private mail companies, Edenor S.A., Edesur S.A., Real

Estate Registry of the Federal Capital and of the Province of Buenos Aires, National Registry of Motor

Vehicles, Government of the City of Buenos Aires and other Municipalities, private utilities companies,

centralized and/or decentralized autonomous state-owned companies, and all other public and/or

private authorities, banking institutions, agencies, or offices, whether national, provincial, or municipal,

already created or to be created, exercising on her own or through legal representatives, the

appropriate actions or procedures, with the authority to submit writs, petitions, documents, simple or

sworn statements, evidence, witnesses and any other supporting proofs, sign forms, file and answer

complaints, countersuits, third-party claims, and counterclaims; appeal and withdraw appeals, answer

interrogatories and compel the answer of interrogatories, take oaths and demand the administration

of oaths, as well as promissory oaths and guarantees, request pre-judgment and final attachments,

the lifting of attachments, injunctions and the lifting of injunctions, the sale or auctioning of her debtors'

assets, and evictions; file all the possessory actions and petitions necessary to guarantee and defend

the principal's property or ownership rights; give reductions, grant wait times, rescind lease

agreements, extend jurisdiction, claim nullity, discredit, challenge, draft, and sign records; appoint

experts, notaries, accountants, appraisers, liquidators, auctioneers, and all other persons necessary;

propose, accept, or reject debt restructuring plans; request bankruptcy proceedings from her debtors,

attend creditors' meetings, accept adjudications of assets or other conditions that may be proposed,

**I CERTIFY THAT THIS IS A TRUE
COPY OF THE ORIGINAL
DOCUMENT. OFFICE OF THE
SECRETARY No. 10,**
January 5, 2017. /Illegible signature/

**Scanned by CamScanner**

[Round stamp: Association of Notaries Public]

011135318

settle any pending or arising disagreement, or submit it to arbitration or amiable compositeur proceedings, granting the appropriate deeds with or without fines, practicing for that purpose before any competent authorities and courts, as many acts, procedures, and formalities as may be necessary; to claim and file judicial and/or administrative claims for pension benefit claims, denounce or file a criminal complaint against any person who criminally attempts against the principal or against her property or possessions; receive and provide –in and out of court– the appropriate answers to charges; intervene in mediation proceedings in all their instances, entering into agreements or proposing transactions and signing all related documentation with the broadest powers.- To grant general and special powers of attorney, and substitute in whole or in part this power of attorney, all of it with exemption of costs and with obligation of having as good and valid whatever is done and practiced in its merit according to law, being able to revoke such substitutions.- To grant, accept, and sign any public and private deeds and documents that may be necessary, performing for that purpose as many acts, procedures, and formalities as may be necessary for the best enforcement of this mandate.- **UPON READING** this record out loud to her, she ratified its contents and grants it as is, signing before me, the authorizing Notary Public, I so attest.- **VANINA VARA.-** There is a seal.- Before me: **H. E. LANZANI.- IT MATCHES** the original deed that I had before me in page 604 of the Registry of Public Contracts of the Federal Capital No. 391 under my keep, I so attest.- I hereby issue a first certified notary copy to the Principal, in four sheets of Notary Paper marked with the numbers N 011135315 / 16 /17/ 18, which I seal and sign in the place and on the date in which it was granted.

[Illegible stamp]                                    /Illegible signature/

**Scanned by CamScanner**



# LANGUAGE

## I N N O V A T I O N S
*Helping businesses communicate worldwide™*

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client.  The original document(s) was translated from Spanish into English by a professional translator fluent in both the source and target languages and at completion delivered to the client on March 6, 2018.

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true. Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: __March 6, 2018__

Signature: _____

David Brinkmann, Project Manager
Language Innovations, LLC

Subscribed and sworn before me this ___6th___ day of ___March___ , 20 _18_ , at Washington, DC.

_____
Notary Public

My Commission expires: __BRIAN FRIEDMAN__
Notary Public District of Columbia
My Commission Expires July 14, 2018

1725 I Street, NW  ♦  Suite 300  ♦  Washington, DC 20006   |   3600 Chain Bridge Road  ♦  Suite 14  ♦  Fairfax, VA 22030
202.349.4180 tel  ♦  888.349.4180 toll free  ♦  202.349.4182 fax  ♦  translate@languageinnovations.com  ♦  www.languageinnovations.com



283

—1—

N 011135315

FOLIO 604.- PRIMERA COPIA.-PODER GENERAL AMPLIO DE ADMI-

NISTRACION Y DISPOSICION: VARA Vanina a favor de INOCENTI Ana-

lia Hortensia.- ESCRITURA NUMERO DOSCIENTOS TREINTA Y O-

CHO.- En la Ciudad de Buenos Aires, Capital de la República Argentina, a

treinta y uno de Agosto del año dos mil nueve, ante mi, Escribano autorizan-

te, comparece doña VANINA VARA, quien manifiesta ser argentina, divor-

ciada, nacida el 10 de mayo de 1972, titular del Documento Nacional de I-

dentidad número 22.709.003, C.U.I.T 27-22709003-6, domiciliada en la ca-

lle Olleros 2222, piso 7° "A" de la Ciudad Autónoma de Buenos Aires, per-

sona hábil que identifico en los términos del artículo 1002 del Código Civil,

doy fe y dice. Que confiere PODER GENERAL AMPLIO DE  ADMINIS-

TRACION Y DISPOSICION a favor de doña ANALIA HORTENSIA INO-

CENTI, argentina, divorciada, titular del Documento Nacional de Identidad

número 14.010.015, con domicilio en la calle Olleros 1850, piso 2° "B" de la

Ciudad Autónoma de Buenos Aires, para que en su nombre y representa-

ción administre, gobierne, disponga y dirija sin limitación alguna todos los

bienes muebles, inmuebles, negocios, créditos, títulos, acciones, derechos

hereditarios, valores y cualesquiera otros que actualmente posea o adquie-

ra en adelante por cualquier título, razón o concepto, ya sea a su nombre o

en comunidad con su mandataria o en condominio con otras personas en ju-

risdicción de la República Argentina y en el extranjero.- A TAL FIN la facul-

ta para realizar los siguientes actos: Comprar o enajenar, vender y disponer

de  cualquier modo o forma a título oneroso, toda clase de bienes muebles,

inmuebles, rodados, automotores, títulos, acciones, valores y créditos,  es-

tableciendo en cada caso su porcentaje en el condominio, al contado o a

CERTIFICO QUE LA PRESENTE
ES COPIA FIEL DE SU ORIGINAL
SECRETARIA N° 10.-

5 de enero de 201

nio O. Dian
Secretaria

**Scanned by CamScanner**



N 011135315

plazos, por unidad, en bloque o fraccionados, ya sea en lotes o por el régi-

men de la propiedad horizontal o colectiva, por los precios, formas de pago

y demás condiciones que viere convenir, abonando sus importes y dando o

exigiendo los recibos, cartas de pago y las garantías reales o personales

que fueren menester, otorgando y/o tomando la posesión de los bienes que

se enajenan y/o adquieran.- Adquirir, según los casos, toda clase de accio-

nes y derechos, derechos sobre propiedades en posibles sucesiones o he-

rencias, por los precios, formas de pago y demás condiciones que conven-

ga.- Aceptar toda clase de bienes en pago de lo que se les adeude o lle-

guen a adeudársele, así como adjudicaciones, ya sea por arreglos judicia-

les o privados.- Afectar y desafectar del régimen de Bien de Familia los in-

muebles que adquieran o los adquiridos con anterioridad al presente manda-

to,- Constituir y aceptar Usufructos.- Para que de en locación, sublocación,

aún por periodos mayores de cinco años, por los precios, formas de pago,

plazos y demás condiciones que estipulare, firmando el respectivo contrato

de locación y convenio de desocupación si correspondiere, por el precio,

plazo y condiciones que viere convenir, solicite garantías, haga renovacio-

nes, cobre y perciba el importe del alquiler o cualquier otro importe que co-

rrespondiere a su representada, otorgando recibos y cartas de pago, res-

cinda contratos, concurra a Asambleas de copropietarios con voz y voto,-

Cobrar y percibir y abonar el importe de esos alquileres o arriendos, así

como los atrasados o cualquier suma de dinero que puedan adeudarla o a-

deudare o llegaren a adeudarle o pudiese adeudar por cualquier otro con-

cepto, firmando y exigiendo los correspondientes recibos, cancelaciones,

cartas de pago y otros documentos del caso, simples o por escritura públi-

Scanned by CamScanner



201

–2–

011135316

ca.- Hacer los gastos propios de la administración y refacciones de toda

clase, pagar los impuestos municipales u otros, convenir pólizas de seguro

contra incendio y accidentes y cobrar y percibir sus importes en caso de si-

niestro y dar o hacer dar fiel cumplimiento a las ordenanzas municipales,

servicios sanitarios y de cualquier otra institución u oficina pública.- Enten-

der en toda cuestión relativa a medianerías, pudiendo adquirir o enajenar

según los casos, esa clase de derechos o formalizar los arreglos y conven-

ciones, bajo los precios y demás condiciones que al respecto juzgue opor-

tuno, abonando o percibiendo su precio al contado o a plazos, dando o exi-

giendo los recibos, cartas de pago y otros resguardos pertinentes, en ins-

trumentos públicos y privados.- Confirmar y ratificar todos los actos relati-

vamente nulos y anulables en los que la otorgante sea parte o tenga algún

interés.- Hacer declaraciones sobre el origen del dinero invertido o a inver-

tirse.- Recibir consignaciones de cualquier naturaleza, en las condiciones

que estime conveniente.- Para que en los Bancos oficiales, mixtos o particu-

lares, nacionales, provinciales o municipales del país o del extranjero, que

existan al presente o se crearen en el futuro, sus sucursales o agencias y

Caja de Ahorro y Seguro, haga depósitos de dinero, títulos, acciones y va-

lores, los retire girando sobre esos depósitos y sobre todos los que a nom-

bre del mandante hubieren sido depositados o se depositen en adelante

por cualquier motivo o concepto, ya sea en cuenta corriente, plazo fijo o ca-

ja de ahorro, otorgando y suscribiendo al efecto recibos, cheques u otras li-

branzas.- Para que en dichos establecimientos bancarios pueda solicitar y

percibir a nombre de la poderdante cualquier cantidad de dinero o valores,

ya sea girando cheques u otras libranzas, contra sus cuentas corrientes o

CERTIFICO QUE LA PRESENTE
ES COPIA FIEL DE SU ORIGINAL
SECRETARIA Nº 10,

...... 5 de enero ... edición ... 2017

Secretari...

Scanned by CamScanner



011135316

bien descontando letras, pagarés, giros, vales u otros documentos, firmando como aceptante, girante o endosante, pudiendo hacer novaciones de deudas y renovaciones o amortizaciones de toda clase de documentos anteriores o posteriores a este mandato.- Solicitar cartas de crédito y firmar la documentación necesaria.- Abrir o clausurar cuentas.- Librar, firmar, aceptar, girar o endosar cheques, giros, letras, pagarés, pólizas, conocimientos y recibos de acciones o títulos, pudiendo retirar o cobrar todo lo que ellos expresan, como asimismo títulos, valores y todo otro documento de cualquier naturaleza y volverlos a caucionar.- Retirar libretas de cheques.- Arrendar y renovar arrendamientos de Cajas de  Seguridad, ya se hallen estas en los tesoros de instituciones bancarias,  casas de comercio o particulares, pudiendo abonar el importe de esos arriendos y sus renovaciones y disponer de las llaves de dichas cajas, a  los efectos de guardar y retirar de las mismas, valores, acciones, títulos, dinero en efectivo, alhajas y todo cuanto pueda ser motivo de guarda, sin limitación de ninguna especie.- Reclamar, cobrar y percibir toda cantidad de dinero, mercaderías o valores que se adeuden al otorgante aunque esas obligaciones fueren anteriores a este mandato y estuvieren o no garantizadas con hipotecas, prendas, cauciones, avales, arras u otras vinculaciones o cauciones reales, otorgando las cancelaciones y recibos correspondientes y desobligando y devolviendo las cosas afectadas, dando y/o retirando la documentación pertinente.- Colocar dinero, sea en papel, oro sellado o cualquier clase de moneda nacional o extranjera, a interés o lo toma prestado, fijando y aceptando plazos, tipos de interés, multas o intereses punitorios y cuantas cláusulas y estipulaciones crean convenientes o se le exijan, aceptando o dando, según los ca-

Scanned by CamScanner





-3-

ll: 011135317

sos, las garantías hipotecarias en primero o segundo grado, prendarias o

anticréditas o de otra naturaleza, que garanticen y aseguren el cumplimien-

to de todo lo pactado - Comprar o enajenar, vender y disponer de cualquier

modo o forma a título oneroso el citado inmueble, títulos, acciones, valores

y créditos, estableciendo en cada caso su porcentaje en el condóminio, al

contado o a plazos, por unidad, en block o fraccionados, ya sea en lotes o

por el régimen de la propiedad horizontal o colectiva, por los precios, for-

mas de pago y demás condiciones que se estipulen, abonando sus impor-

tes y dando o exigiendo los recibos, cartas de pago y las garantías reales o

personales que fueren menester, otorgando y/o tomando la posesión del

bien que se enajena y/o adquiera.- Adquirir, según los casos, toda clase de

acciones y derechos, adquiera derechos sobre propiedades en posibles su-

cesiones o herencias, por los precios, formas de pago y demás condiciones

que convenga.- Aceptar toda clase de bienes en pago de lo que se le adeu-

de o llegue a adeudársele, así como adjudicaciones, ya sea por arreglos ju-

diciales o privados.- Entender en todo lo relativo a los ramos de Correos y

Telecomunicaciones, Aduanas, Marina, Aeronavegación y Ferrocarriles, re-

tirar la correspondencia epistolar y telegráfica, bultos, encomiendas, valo-

res y demás que vinieran a nombre del otorgante o en común con otras

personas, presentando, firmando o exigiendo los recibos, resguardos y o-

tros documentos que fueren menester.- Celebrar contratos de seguro y fle-

tamento.- Efectuar todo trámite relacionado con el patentamiento, baja,

transferencia, entrega, entrada o salida del país de vehículos a nombre del

mandante, pudiendo presentarse ante el Gobierno de la Ciudad de Buenos

Aires y Municipalidades de toda la República y/o Aduanas.

CERTIFICO QUE LA PRESENTE
ES COPIA FIEL DE SU ORIGINAL
SECRETARIA Nº 10,

5 de _____ de _____

Scanned by CamScanner



N 011135317

ral y/o Dirección Nacional de los Registros de Créditos Prendarios y/o Dirección Nacional del Registro de la Propiedad del Automotor y Direcciones de Rentas Nacionales o Provinciales y ante concesionarios y particulares, en todo lo relativo a las tramitaciones inherentes, a cuyo efecto queda facultado para presentarse con toda clase de escritos, boletos y documentos, abone derechos y reclamos de ellos, exijan recibos, retire boletas y demás papeles que correspondan, otorgue y firme toda clase de documentos incluso los referentes a las ventas de vehículos de propiedad de su mandante, asista a audiencias, constituya domicilios y se notifique de resoluciones.- Asimismo queda facultado para sustituir el presente en lo referente al patentamiento y transferencia de vehículos ante el Gobierno de la Ciudad de Buenos Aires y demás Municipalidades de las localidades del país y Dirección Nacional del Registro Automotor.- Represente al otorgante en todos sus asuntos, causas y cuestiones judiciales y administrativas de cualquier clase, naturaleza, fuero o jurisdicción, en los que el mismo sea parte legítima como actor, demandado u otro carácter, compareciendo al efecto ante todos y cualesquiera de los Juzgados y Tribunales Superiores e Inferiores, Nacionales y Provinciales, incluso los Tribunales del Trabajo, Tribunal Doméstico, en lo Penal Económico y de Faltas, Comisiones de Conciliación y de Arbitraje, Ministerios, Secretarías de Estado, Municipalidades, Obras Sanitarias residual, Aguas Argentinas S.A., Aguas y Saneamientos Argentinos, Dirección General Impositiva (D.G.I.), Administración Federal de Ingresos Públicos (AFIP), Direcciones Generales de Rentas e Inmobiliarias, Cajas de Jubilaciones, ANSES (Administración Nacional de la Seguridad Social), Telefónica de Argentina S.A., Telecom Stet France Telecom S.A.,

Scanned by CamScanner



ACTUACION NOTARIAL

(( 011135318

Metrogas S.A., Correo Argentino, correos privados, Edenor S.A., Edesur S.A., Registro de la Propiedad Inmueble de la Capital Federal y de la Provincia de Buenos Aires, Registro Nacional de la Propiedad del Automotor, Gobierno de la Ciudad de Buenos Aires y demás Municipalidades, empresas particulares de servicios públicos, entidades autárquicas centralizadas y/o descentralizadas y demás autoridades, instituciones bancarias, dependencias u oficinas públicas y/o privadas, nacionales, provinciales o municipales, creadas o a crearse, ejercitando por sí o por medio de apoderados, las acciones o gestiones pertinentes, con facultad para presentar escritos, solicitudes, documentos, declaraciones simples o juradas, pruebas, testigos y demás justificativos, suscribir formularios, inicie y conteste demandas, contrademandas, tercerías y reconvenciones, apelar y desistir de las apelaciones, absolver y hacer absolver posiciones, prestar y exigir juramentos, así como cauciones juratorias y garantías, pedir embargos preventivos y definitivos, desembargos, inhibiciones y sus levantamientos, la venta o remate de bienes de sus deudores, desalojos y lanzamientos, deducir todas las acciones posesorias y petitorias que sean necesarias para asegurar y defender el derecho de propiedad o de posesión de la mandante, hacer quitas, conceder esperas, rescindir contratos de arrendamiento, prorrogar jurisdicciones, decir de nulidad, tachar, recusar, labrar y firmar actas, nombrar peritos, escribanos, contadores, tasadores, liquidadores, rematadores y demás personas necesarias, proponer, aceptar o rechazar concordatos, pedir quiebras o concursos civiles de sus deudores, asistir a juntas de acreedores, aceptar adjudicaciones de bienes o demás condiciones que se propongan, transar toda divergencia pendiente o que se suscitare o bien la sometan a

CERTIFICO QUE LA PRESENTE
ES COPIA FIEL DE SU ORIGINAL
SECRETARIA Nº 10.

....5....de....................de......

Pedro J. Diaz
Secretario

Scanned by CamScanner



N 011135318

juicio arbitral o de amigables componedores, otorgando las escrituras del caso con imposición de multas o sin ellas, practicando al efecto ante las autoridades y tribunales que competan, cuantos actos, gestiones y diligencias fueren precisas, reclamar y hacer reclamos judiciales y/o administrativos por reclamos de haberes previsionales, denunciar o querellar criminalmente a toda persona que atente delictuosamente contra el mandante, propiedad o posesión del mismo, percibir en juicio o fuera de él y otorgar los descargos del caso, intervenir en procesos de mediación en todas sus instancias, celebrando acuerdos o proponiendo transacciones y firmando toda la documentación conexa con los mismos con las más amplias facultades.- Confiera poderes generales y especiales y sustituya el presente total o parcialmente, el todo con relevación de costas y obligación de haber por bueno y válido cuanto se haga y practique en su mérito con arreglo a derecho, pudiendo revocar tales sustituciones.- Para que otorgue, acepte y firme todas las escrituras e instrumentos públicos y privados que sean necesarios, practicando en fin cuantos más actos, gestiones y diligencias fueren menester al mejor desempeño del presente mandato.- LEIDA que le fue se ratificó en su contenido y así la otorga y firma por ante mi el Escribano autorizante, doy fe.- **VANINA VARA.-** Hay un sello.- Ante mi: **H.E.LANZANI.- CONCUERDA** con su escritura matriz que pasó ante mi al folio 604 del Registro de Contratos Públicos de la Capital Federal N° 391 a mi cargo, doy fe.- Para la Mandataria expido primera copia en cuatro fojas de Actuación Notarial números N011135315/16/17/18 que sello y firmo en el lugar y fecha de su otorgamiento.-

Scanned by CamScanner

# EXHIBIT "B"

From: **Maria Gutierrez** maryguti.usa@gmail.com
Re:     USA FRAUD
Date:   June 15, 2016, 10:57 a.m.
To:     vanina10@mc.com, christian_galasso@yahoo.com.ar

Hello, Vanina, I cannot be an accomplice any longer. You have been a very good person, and you need to know this.

ANALIA DEFRAUDED YOU. She diverted millions from your account to hers. TOMI IS AN ACCOMPLICE.

She also took funds from your investments.

SHE DEFRAUDED YOU and committed FRAUDULENT MANAGEMENT.

You needed to know because you are a good person. Please pardon the way [I've told you].



# LANGUAGE

## I N N·O·V A T I·O N S
*Helping businesses communicate worldwide™*

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s) are to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client. The original document(s) were translated from Spanish into English by a professional translator fluent in both the source and target languages and at completion delivered to the client on January 11, 2018.

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true. Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: January 11, 2018
_____

Signature: _____
David Brinkmann, Project Manager
Language Innovations, LLC

Subscribed and sworn before me this __11th__ day of __January__, 20 18, at Washington, DC.

_____
Notary Public

My Commission expires: **BRIAN FRIEDMAN**
Notary Public District of Columbia
My Commission Expires July 14, 2018

1725 I Street, NW ♦ Suite 300 ♦ Washington, DC 20006  |  3600 Chain Bridge Road ♦ Suite 14 ♦ Fairfax, VA 22030
202.349.4180 tel ♦ 888.349.4180 toll free ♦ 202.349.4182 fax ♦ translate@languageinnovations.com ♦ www.languageinnovations.com



**De:** **Maria Gutierrez** maryguti.usa@gmail.com
**Asunto:** ESTAFA USA
**Fecha:** 15 de junio de 2016, 10:57 a.m.
**Para:** vanina10@me.com, christian_galasso@yahoo.com.ar

Hola Vanina, No puedo ser mas complice.Vos sos muy buena mina y lo tenes que saber.
ANALIA TE ESTAFO, hizo un desvio millonario de tu cuenta a la cuenta de ella, TOMI ES COMPLICE.
Tambien se quedo con plata de tus inversiones.
TE ESTAFO y hizo una ADMINISTRACION FRAUDULENTA.
Lo tenias que saber porque sos buena mina, perdona la forma.